

**The relief described hereinbelow is SO ORDERED.**

**Signed August 26, 2024.**

_Christopher G. Bradley_
_____
**CHRISTOPHER G. BRADLEY**
**UNITED STATES BANKRUPTCY JUDGE**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| Forza Pipeline Services, Inc., | § | Case No. 24-70030-smr |
| | § | |
| Debtor. | § | Chapter 11, Subchapter V |

**ORDER CONFIRMING DEBTOR'S**
**PLAN OF LIQUIDATION UNDER 11 U.S.C. § 1191(b)**

On August 15, 2024, the Court held a hearing (the "Confirmation Hearing") to consider confirmation of the Plan of Liquidation under Subchapter V of Chapter 11 (the "Plan")[1] filed herein by Forza Pipeline Services, Inc. (the "Debtor") on June 18, 2024 (Docket No. 49). Present or making appearances at the hearing were counsel for the Debtor, the Debtor's representative, Doug Onstead, the Subchapter V Trustee appointed in the case (hereinafter "Sub V Trustee"), counsel for certain creditors who have entered an appearance in the case, and the United States Trustee. The Court has reviewed the Plan, considered the documents admitted into evidence and the testimony of witnesses present at the hearing, considered the statements and arguments of counsel, the docket of the Bankruptcy Case, and considered

---

[1] Capitalized terms used herein without definition shall have the meanings provided for in the Plan. In addition, any term used in the Plan or this Order that is not defined in the Plan or this Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

1

any other relevant factors affecting the case as set forth on the record.

**Based upon the foregoing, the Court finds and determines as follows:**

A.      The Debtor filed this case on March 20, 2024 (the "Petition Date"), and was qualified to be a Debtor under 11 U.S.C. § 109.

B.      This Court has jurisdiction over the Case pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and whether it should be confirmed. Venue in the Western District of Texas was proper on the Petition Date and continues to be proper under 28 U.S.C. §§ 1408 and 1409.

C.      Every person or entity required to receive notice of the hearing on confirmation of the Plan, as well as the Plan voting and Plan objection deadlines set by the Court, received timely and adequate notice as required by the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 2002 and 9014 and the Bankruptcy Code.

D.      The contents of the Plan (with any modifications as set forth below) satisfy the applicable requirements of 11 U.S.C. § 1190 and any other applicable requirements of the Bankruptcy Code.

E.      The Plan (with any modifications as set forth below) and the Debtor have satisfied all applicable requirements for confirmation of the Plan under 11 U.S.C. § 1129(a), except for 11 U.S.C. § 1129(a)(8) and/or 1129(a)(10). Thus, the Plan cannot be confirmed under 11 U.S.C. § 1191(a). However, the Plan can and should be confirmed under 11 U.S.C. § 1191(b), as the Plan (with any modifications as set forth below) does not discriminate unfairly and is fair and equitable with respect to each impaired class of claims and interests that have not accepted the Plan as required by 11 U.S.C. § 1191(c).

F.      The Plan (with any modifications as set forth below) and the Debtor have satisfied all other requirements of the Bankruptcy Code and Bankruptcy Rules necessary to confirm the Plan.

2

G.     The Court specifically finds that there is cause under 11 U.S.C. § 1194(b) for the Debtor to serve as the Disbursing Agent under the Plan.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AS FOLLOWS:**

1.     The Plan of Liquidation under Subchapter V of Chapter 11 filed  by the Debtor on June 18, 2024 (Docket No. 49) and attached hereto as **Exhibit A**, is hereby **CONFIRMED** and approved in each and every respect as a non-consensual plan pursuant to 11 U.S.C. § 1191(b), with the modifications set forth below. The terms of the Plan are incorporated by reference into, and are an integral part of, this Confirmation Order.

2.     To the extent any objections to confirmation of the Plan have not been resolved or withdrawn, any such objections are hereby denied.

3.     The effective date of the Plan shall be August 29, 2024 ("Effective Date"), notwithstanding anything to the contrary in the Plan.

4.     In the event of a conflict between provisions of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

5.     Within three (3) days after the Effective Date, the Debtor shall serve notice of (i) entry of this Confirmation Order; (ii) the occurrence of the Effective Date; and (iii) any bar dates and any other deadlines set by the Plan ("Notice"), pursuant to Bankruptcy Rule 3020(c). The Notice shall be sent to all creditors and parties-in-interest by first class mail, postage prepaid. The Debtor shall thereafter promptly file a copy of such Notice with proof of mailing with the Court.

6.     The provisions of the Plan, and any documents executed in conjunction with the Plan, and this Confirmation Order are, as of the Effective Date, effective and binding on the Debtor, all creditors of the Debtor, and any other parties-in-interest, as well as their respective heirs, successors, assigns, or other persons claiming through them. The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan

3

be approved and confirmed in its entirety subject to the modifications set forth herein. Each provision of the Plan shall be deemed authorized and approved by this Confirmation Order, subject to the modifications set forth herein, and shall have the same binding effect of every other provision in the Plan, whether or not mentioned in this Confirmation Order.

7.      The Debtor shall make the payments to creditors required by the Plan under 11 U.S.C. § 1194(b) ("Disbursing Agent"). The Debtor as Disbursing Agent shall make all required plan payments in accordance with the terms of the Plan.

8.      The Disbursing Agent shall file a report six (6) months after the Effective Date and every six (6) months thereafter detailing payments made by the Debtor and disbursements made under the Plan.

9.      Within fourteen (14) days of entry of this Order, the Debtor shall provide the Disbursing Agent with a list of allowed claims, associated account numbers, the amount of such claims, and the correct mailing address for the Disbursing Agent to send plan payments. If there are any disputed claims, the Debtor shall provide a separate list of such disputed claims and an estimated date of resolution.

10.     Except as otherwise provided in the Plan, no distributions will be made with respect to a disputed claim until the resolution of such dispute by settlement or final order. The provisions of this section are not intended to restrict payment of any allowed claims which are not disputed. Until a disputed claim is resolved, the Disbursing Agent shall hold any portion of plan payments that would be disbursed to the claimant if the claim were allowed in full, subject to a final resolution of the disputed claim. Upon resolution in favor of the allowed claim, the Disbursing Agent will distribute withheld funds to the claimant within the next payment period. If the disputed claim is disallowed, the Disbursing Agent will make withheld funds available to allowed claim

4

holders in accordance with the terms of the Plan within the next payment period.

11.     Disbursements may be delivered by the Disbursing Agent to (i) the address list provided by the Debtor under paragraph 9; (ii) the address for payment set forth on a proof of claim filed by the claimant or its authorized agent; or (iii) at the address set forth in any written notices of change of address delivered to the Disbursing Agent. If any distribution to a claimant of an allowed unsecured claim is returned to the Disbursing Agent as undeliverable, no further distributions shall be made to such claimant unless and until the Disbursing Agent is notified in writing of such claimant's correct mailing address, at which time all currently due distributions shall be made to such claimant as soon as practicable. Undeliverable distributions shall remain in the possession of the Disbursing Agent until such time as a distribution becomes deliverable and shall not be supplemented with any interest, dividends, or other accruals of any kind. If, despite reasonable effort, the Disbursing Agent is unable to obtain the information necessary to deliver a distribution within six (6) months following the return of the undeliverable distribution, the Disbursing Agent shall deposit the amount with the Clerk of the Court in accordance with 11 U.S.C. § 347(a).

12.     The Trustee shall file all reports required by 11 U.S.C. §§ 1183(b)(1) and 704(a)(9) in the manner prescribed by the United States Trustee Program. Upon the completion of the Plan, the Trustee shall file their final report and seek a discharge of their duties as Trustee.

13.     The Trustee shall be compensated for their post-confirmation duties at their approved hourly rate. The Trustee may file a notice setting forth post-confirmation fees and expenses on a quarterly basis with the Court. All parties in interest will have fourteen (14) days after the notice is filed to object to the Trustee fees and expenses disclosed therein. If no objection is received, the Debtor shall pay the Trustee without further order of the Court.

14.     The Trustee shall file a post-confirmation final fee application within ninety (90) days of the notice of completion of plan payments.  The final fee application shall include all compensation received and disclosed in the quarterly post-confirmation notices filed with the Court.

15.     The Debtor and its respective agents and attorneys are hereby authorized, empowered, and directed to carry out the provisions of the Plan and to perform the acts and execute and deliver the documents as are necessary or appropriate in connection with the Plan and this Order.

16.     Nothing in this Confirmation Order or the Plan shall in any way operate to, or have the effect of, impairing or extinguishing in any respect any causes of action disclosed on Debtor's schedules or arising under chapter 5 of the Bankruptcy Code or any other claims or defenses owned by the Debtor on the Effective Date, and the Debtor shall retain such claims as provided in the Plan, including any claims or defenses that may not have been defined in the Plan but are nonetheless owned by the Debtor on or before the Effective Date. After the Effective Date, the Debtor may, in accordance with the terms of the Plan, evaluate and determine whether to pursue any such retained claims.

17.     Except as otherwise expressly provided in the Plan, all payments and other distributions to be made under the Plan shall be timely and proper if mailed by first class mail on or before the date of distribution provided for in the Plan to the address listed in the creditor's proof of claim filed in this case, or, if no proof of claim is filed, to the creditor's last known mailing address.

18.     Pursuant to 11 U.S.C. § 1192, within thirty (30) days of the filing of the Sub V Trustee's NDR or TFR, the Debtor shall file a motion for entry of the discharge order.  In the

6

motion for entry of discharge, the debtor shall certify that (1) all payments required under the confirmed plan have been made, (2) all administrative expenses, including the approved fees and expenses of the Subchapter V Trustee have been paid in full, and (3) that the debtor is entitled to entry of discharge.

19.     The Debtor and all holders of Claims and Interests are bound by the Plan within the meaning of 11 U.S.C. § 1141.

20.     The Court shall retain jurisdiction of this case for all purposes provided in 11 U.S.C. §§ 1127(b) and 1142, and Bankruptcy Rule 3020(d).

21.     All property of the estate shall remain vested in the estate until the Debtor completes all the payments under the Plan and a discharge is entered herein. In addition, property of the estate shall include all property identified in 11 U.S.C. § 1186.

22.     This Confirmation Order is a final order and effective and enforceable immediately upon entry and the period in which an appeal must be filed shall commence upon the entry hereof.

23.     The following Nonmaterial Plan Modifications are hereby approved:

a.      Texas Taxing Authorities. Notwithstanding anything else to the contrary in the Plan or Confirmation Order, these provisions will govern the treatment of the claims of the Texas Comptroller of Public Accounts and Texas Workforce Commission (collectively, the "Texas Taxing Authorities"): (1) nothing provided in the Plan or Confirmation Order shall affect or impair any statutory or common law setoff rights of the Texas Taxing Authorities in accordance with 11 U.S.C. § 553; (2) nothing provided in the Plan or Confirmation Order shall affect or impair any rights of the Texas Taxing Authorities to pursue any non-debtor third parties for tax debts or claims; (3) nothing provided in the Plan or Confirmation Order shall be construed to preclude the payment of interest on the Texas Taxing Authorities' administrative expense tax claims; (4) to the extent that interest is payable with respect to any administrative expense, priority or secured tax claim of the Texas Taxing Authorities, the interest rate shall be 9.5%; and (5) the

Texas Taxing Authorities are not required to file a motion or application for payment of administrative expense claims pursuant to 11 U.S.C. § 503(b)(1)(D); the Texas Taxing Authorities' administrative expense claims are allowed upon filing, subject to objection on substantive grounds.

The Secured and Priority Tax Claims owed to the Texas Taxing Authorities shall be paid in an amount equal to the Allowed amount of such Claim within sixty (60) months of the Debtor's bankruptcy petition, either (i) in cash within 30 days of the Closing of a Sale of Assets, (ii) in equal monthly installments of principal and accrued interest, with the first installment due within 30 days of the Effective Date, or (iii) as agreed to by the Debtor and the Texas Taxing Authorities in writing. The Texas Taxing Authorities will receive interest on their Secured Tax Claims from the Petition Date and Priority Tax Claims from the Effective Date as required by sections 511 and 1129(a)(9)(C) and (D) of the Bankruptcy Code. For the avoidance of doubt, pursuant to 1129(a)(9)(D), the Texas Workforce Commission's Secured Claim No. 6-2 shall not be treated in a manner less favorable than provided in 1129(a)(9)(C).

A failure by the Debtor or Reorganized Debtor to make a plan payment to an agency of the State of Texas shall be an Event of Default. If the Debtor or Reorganized Debtor fails to cure an Event of Default as to an agency of the State of Texas within ten (10) days after service of a written notice of default, then that agency may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies available under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in this court. The Debtor and/or Reorganized Debtor can receive up to three (3) notices of default, however, the third default cannot be cured.

b.     Louisiana Taxing Authorities.     With respect to any administrative tax expense, the Louisiana Department of Revenue as a governmental entity is exempt from the requirement of filing a request for payment in order to have an allowed administrative tax expense pursuant to section 503(b)(1)(B) and/or (C) of the Bankruptcy Code as exempted under section 503(b)(1)(D) of the Bankruptcy Code.

c.     Reliance Financial. With respect to Paragraph H of the Plan pertaining to the treatment of the claim of Reliance Financial, this paragraph is deleted in its entirety and replaced as follows:

Pursuant to pre-petition agreement(s) between the Debtor and Reliance Financial, Reliance Financial both owns and has a security interest in the Debtor's accounts receivable. Reliance Financial has the right to collect the accounts receivable (with the Debtor being required to provide information regarding the uncollected accounts), rather than the Debtor engaging in efforts to collect the accounts receivable. Pursuant to the signatures of the undersigned counsel, both TXP Capital, LLC and First Bank & Trust hereby waive and release any lien claim to the Debtor's accounts receivable. Reliance Financial's deficiency claim after applying its recovered accounts receivable will be treated as a Class V unsecured claim.

# # #

*Submitted by:*

/s/ Todd J. Johnston
_____
Todd J. Johnston; SBN 20450837
MCWHORTER COBB & JOHNSON, LLP
1722 Broadway
Lubbock, Texas 79401
806/762-0214; 806/762-8014 (FAX)
Email: tjohnston@mcjllp.com
*Attorneys for the Debtor*

*Agreement as to Paragraph 23(c) Only of the Order:*

/s/ Shanna M. Kaminski                                    Dated:   August 15, 2024
**KAMINISKI LAW, PLLC**
Shanna M. Kaminski
P.O. Box 247
Grass Lake, Michigan 49240
Telephone:   (248) 462-7111
Email:   skaminski@kaminskilawpllc.com
*Attorneys for Reliance Financial*

/s/   H. Grady Terrill                                    Dated:   August 19, 2024
**CRAIG, TERRILL, HAMM, GROSSMAN & ERWIN, LLP**
H. Grady Terrill; State Bar No. 19792300
9816 Slide Road, Suite 201
Lubbock, Texas 79424
(806) 744-3232 - Telephone
(806) 744-2211 -- Facsimile
*gradyt@cthgelawfirm.com*
*Attorneys for First Bank & Trust, a Division of HTLF*

/s/   Brad W. Odell                                    Dated:   August 16, 2024
**MULLIN, HOARD & BROWN, LLP**
Brad W. Odell; State Bar No. 24065839
P.O. Box 2585
Lubbock, Texas 79408
(806) 765-7491 - Telephone
(806) 765-0553 -- Facsimile
*bodell@mhba.com*
*Attorneys for TXP Capital, LLC*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| FORZA PIPELINE SERVICES, INC., | § | Case No. 24-70030 |
| | § | In Proceedings Under Chapter 11 |
| Debtor. | § | Subchapter V |
| | § | |

## DEBTOR'S CHAPTER 11 PLAN OF LIQUIDATION

### Dated: June 18, 2024

### TO ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE SHAD M. ROBINSON, UNITED STATES BANKRUPTCY JUDGE:

### SUMMARY

This *Debtor's Chapter 11 Plan of Liquidation* (the "Plan") is proposed by Forza Pipeline Services, Inc. ("Debtor"). On March 20, 2024, Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas, Midland Division.

This Plan is provided to all known Creditors and parties in interest pursuant to the Bankruptcy Code. The Debtor is currently in the process of marketing its assets, which sale will be subject to certain lien claims of its secured creditors as set forth in further detail in this Plan. The Debtor has designed this Plan to provide for an orderly disbursement of the proceeds of the Debtor's assets upon liquidation to Creditors holding Allowed General Unsecured Claims to the maximum extent possible after payment in full of all Allowed Secured Claims, Allowed Administrative Claims, Allowed Priority Claims and Allowed Priority Tax Claims. The Plan protects and preserves the interests of the various types of creditors and provides for prompt and meaningful treatment of their claims, to the best of the Debtor's ability in accordance with the provisions of the Bankruptcy Code.

Your rights may be affected. You should read this Plan carefully and discuss it with your attorney if you have one. If you do not have an attorney, you may wish to consult one.

### ARTICLE I
### BACKGROUND

#### A. Background Facts

The Debtor was an oilfield service company which was formed as a Texas corporation in 2017. The Debtor was headquartered at 2217 E. County Road 155, Midland, Texas 79706.

Page 1 of 14

# EXHIBIT "A"

## B. Events Leading to Chapter 11 Filing

Forza was in the business of providing oilfield pipeline installation and pipeline repair services, among other general oilfield services to its customers in and around the Permian Basin. Forza provided its services pursuant to master service agreements ("MSAs") in place with medium and large producers and operators, including Continental Resources, Inc. and Conoco Phillips. During a period of reduced cash flows in 2023 and the significant accumulation of indebtedness, one or more of Forza's unpaid subcontractors delivered notices of their intent to file mineral liens to certain counterparts of Forza's MSAs, which ultimately caused these counterparties/customers to immediately cease extending Forza work under their respective service contracts with the Debtor.

Further, one of Forza's shareholders refused to vote in favor of any substantial sale of Forza's assets as required under the corporations's bylaws. Under Forza's bylaws, a supermajority of shareholders were required to vote in favor of such a sale, which was essentially blocked by this shareholder without reasonable explanation. Unable to operate or engage in an orderly sale of its assets for the benefit of its creditors outside of bankruptcy, the Debtor had no option other than to commence the instant bankruptcy case.

## C. Significant Events During the Bankruptcy Case

The Debtor filed a Voluntary Petition for relief under Subchapter V of Chapter 11 of the United States Bankruptcy Code on March 20, 2024 (the "Petition Date").

Pursuant to Notice filed March 22, 2024 [Docket No. 8], Eric Terry was appointed as Subchapter V Trustee in this Bankruptcy Case.

On April 3, 2024, the Initial Debtor Interview was held.

The meeting of creditors was held and concluded on April 15, 2024.

Pursuant to Order entered May 3, 2024 [Docket No. 41] the employment of McWhorter, Cobb & Johnson, LLP as counsel for the Debtor was approved.

On May 6, 2024, the mandatory Status Conference under 11 U.S.C. § 1188 was held.

Pursuant to Application filed May 3, 2024 [Docket No. 40], the Debtor sought employment of Legacy Real Estate of Midland, Texas, as its real estate broker to the Debtor. The Application was approved by the Court on June 7, 2024 [Docket No. 47] and the real property and improvements is currently listed for sale.

## D. Asset Summary

The Debtor owns a building and a six (6) acre yard located at 2217 East County Road 155, Midland, Texas. The Debtor's real estate broker recently listed this property for sale in the amount of $1,750,000.00. The Debtor currently has on hand oilfield equipment and other assets with a combined total estimated value of $809,000. The Debtor has been working since the Petition Date to secure the maximum value it can for

its real and personal property and will continue to do so. The Debtor also intends to pursue all accounts receivable and claims of the estate, including causes of action afforded the Debtor under Chapter 5 of the Bankruptcy Code.

### E. Alternatives to This Plan

If this Plan is not approved on a consensual basis by the Bankruptcy Court under section 1191(a) of the Bankruptcy Code, then Debtor will move to confirm this Plan on a nonconsensual basis under section 1191(b) of the Bankruptcy Code. If Debtor fails to confirm either a consensual or a nonconsensual plan, the most likely alternative is conversion of this case to Chapter 7. If Debtor's case is converted to Chapter 7, then secured creditors' recovery will be limited to the value of their collateral and Debtor's unsecured creditors would be limited to the liquidation value of non-exempt unencumbered property of the Estate.

While it is believed there is equity in the Debtor's real property upon liquidation in a Chapter 7 proceeding, there is no guarantee that value will be realized at a forced sale. The second alternative to confirmation is dismissal of the Bankruptcy Case. In the judgment of the Debtor, dismissal of the proceeding would lead to a highly unsatisfactory result. Numerous lawsuits have been filed by creditors attempting to collect debt owed to them. Such litigation would ultimately result in a disorganized and inefficient liquidation of the assets of the Debtor.

### ARTICLE II
### DEFINITIONS AND RULES OF CONSTRUCTION

### A. Defined Terms

In addition to such other terms as are defined in other sections of this Plan, the following terms shall have the meanings set forth below. The definitions set forth in § 101 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

2.1. "Administrative Expense" includes any cost or expense of administration of Debtor's chapter 11 case allowed under subsections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate of Debtor, any actual and necessary expenses of operating the business of Debtor, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code.

2.2. "Allow" or "Allowance," when used with respect to a Claim, shall mean the process of determining whether a Claim is to be Allowed pursuant to this Plan.

2.3. "Allowed," when used with respect to a Claim (other than an Administrative Expense), means a Claim (a) to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (i) as to which no Objection was filed by the Objection Deadline, or (ii) as to which an Objection was filed by the Objection Deadline, to the extent, if any, such Claim is ultimately allowed by a Final Order; provided, however, if a Claim is to be determined in a forum other than the Bankruptcy Court, such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court. With respect to an Administrative Expense (other than Ordinary Course Claims), such Claims will be Allowed when a Final Order has been entered by the Bankruptcy Court allowing such Administrative Expense Claim.

2.4. "Assets" includes all right, title, and interest in and to all property of every type or nature owned or claimed by Debtor or the Estate as of the Effective Date, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to, all property of the Estate as defined in section 541 and, as applicable, section 1186 of the Bankruptcy Code.

2.5. "Ballot" means the form of ballot provided to holders of Claims or Interests entitled to vote pursuant to Bankruptcy Rule 3017(d), by which each such holder may accept or reject the Plan.

2.6. "Bar Date" is the date established by the Bankruptcy Court, including through any standing order, for filing Proofs of Claim which, in this Bankruptcy Case, is May 29, 2024; provided, however, that if the Bankruptcy Court has ordered an extension of the time by which a particular Creditor may file a proof of Claim, the date set with respect to such Creditor shall be the Bar Date with respect to such Creditor, but only as to such Creditor.

2.7. "Claim" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, legal, equitable, secured or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, secured or unsecured.

2. 8. "Claimant" means the holder of a Claim.

2.9. "Class" means a category or group of holders of Claims as designated in Article III of the Plan.

2.10. "Collateral" means any Asset subject to a valid and enforceable Lien to secure payment of a Claim, including any right of offset asserted against any Asset.

2.11. "Confirmation Date" means the date of entry of the Confirmation Order.

2.12. "Confirmation Hearing" means the hearing, as it may be continued from time-to time, conducted by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan, as the same may be amended, modified, or supplemented.

2.13. "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

2.14. "Contested," when used with respect to a Claim, means a Claim: (a) that is listed in the Schedules of Debtor as disputed, contingent, and/or unliquidated, or in the amount of "$0.00" or "Unknown"; (b) that is listed in the Schedules of Debtor as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; (c) that is not listed in the Schedules of Debtor, regardless of whether or not a proof of Claim has been filed with the Bankruptcy Court; (d) as to which an Objection has been or may be timely filed and which Claim has not been Allowed by a Final Order; or (e) for which the proof of Claim is filed after the applicable Bar Date; provided, however, that all Claims shall be deemed as Contested until the applicable Objection Deadline has passed. In addition, any Claim which is subject to an Objection or other pleading seeking either subordination (whether equitable or otherwise) or recharacterization of such Claim, including pursuant to section 510(c) of the Bankruptcy Code, shall likewise be deemed to constitute a Contested Claim until such Objection has been resolved by a Final Order.

2.15. "Creditor" shall have the same meaning as in section 101(10) of the Bankruptcy Code.

2.16. "Disallowed," when used with respect to all or any part of a Claim, means that portion of a Claim to which an Objection or motion to disallow has been sustained by a Final Order or, as to any Contested Claim, any portion thereof which is not Allowed by a Final Order of the Bankruptcy Court.

2.17. "Distribution" shall refer to and include any distribution of any property pursuant to this Plan.

2.18. "Effective Date" means the first Business Day which is fourteen (14) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) Business Days after the Confirmation Date, and upon which all conditions to the effectiveness of the Plan.

2.19. "Equitable Subordination" shall be broadly construed and shall encompass any right or remedy to equitably subordinate or recharacterize as equity any Claim, including without limitation any such right or remedy pursuant to section 510(c) of the Bankruptcy Code.

2.20. "Estate" shall mean the bankruptcy estate of Debtor in this Bankruptcy Case, as the context requires.

2.21. "Estate Professional" means those Persons employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328 and 1103 of the Bankruptcy Code or who are entitled to compensation or reimbursement pursuant to sections 330, 503(b)(3)(D) or 506(b) of the Bankruptcy Code.

2.22. "Final Decree" shall mean the decree contemplated under Bankruptcy Rule 3022 closing this Bankruptcy Case.

2.23. "General Unsecured Claim" shall mean a Claim which is not a Secured Claim, is not an Administrative Expense and is not entitled to priority of distribution pursuant to section 507 of the Bankruptcy Code, and includes any Rejection Claims pursuant to section 502(g) of the Bankruptcy Code.

2.24. "Governmental Bar Date" shall mean September 20, 2024, the date by which governmental units must file proofs of claim pursuant to section 502(b)(9) and Bankruptcy Rule 3002(c)(1).

2.25. "Lien" means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any Asset, including any right of offset asserted against any Asset.

2.26. "Objection" includes (a) an objection to the allowance of a Claim interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (b) as to any Taxing Authority, shall include a proceeding commenced under section 505 of the Bankruptcy Code to determine the legality or amount of any tax. Any pleading seeking to subordinate or recharacterize a Claim shall also constitute an Objection.

2.27. "Plan" means this Plan of Liquidation filed by Debtor, either in its present form or as it may be altered, amended, modified, or supplemented from time-to-time.

2.28. "Priority Claim" means a Claim that is entitled to priority of payment under sections 507(a)(4) through (7) of the Bankruptcy Code.

2.29. "Priority Tax Claim" means a Claim entitled to priority of payment pursuant to section 507(a)(8) of the Bankruptcy Code, other than any Property Tax Claims.

2.30. "Property Tax Claim" means a Claim for Property Taxes.

2.31. "Property Taxes" shall mean such taxes assessed by any Taxing Authority against any property of Debtor based on the value thereof, as allowed by applicable state and local law.

2.32. "Pro Rata Share" shall mean, as to the holder of a specific Claim, the ratio that the amount of such holder's Claim bears to the aggregate amount of all Claims included in the particular Class or category in which such holder's Claim is included.

2.33. "Schedules" means the schedules of assets and liabilities and the statement of financial affairs filed by Debtor as required by section 521 of the Bankruptcy Code.

2.34. "Secured Claim" shall mean (a) a Claim secured by a Lien against an Asset, to the extent such Lien is valid, perfected and enforceable under applicable non-bankruptcy law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and which is duly Allowed, but only to the extent that such Claim does not exceed the value of the Assets which the Bankruptcy Court finds are valid security for such Claim (except, if the holder of such Claim makes the election provided for in section 1111(b)(2) of the Bankruptcy Code, the entire amount of the Claim shall be a Secured Claim), and (b) any valid and enforceable right of offset asserted against Debtor or any Asset.

2.35. "Secured Creditor" shall mean the holder of a Secured Claim.

2.36. "Subchapter V Trustee" shall mean Eric Terry.

2.37. "Subchapter V Trustee Fees" shall mean those fees paid or to be paid to the Subchapter V Trustee pursuant to section 330 of the Bankruptcy Code.

2.38. "Substantial Consummation" means when the requirements of section 1101(2) of the Bankruptcy Code are factually satisfied.

2.39. "Taxing Authority" shall include the State of Texas or any subdivision thereof, including without limitation any political subdivision of the State of Texas assessing ad valorem taxes against any of the Assets.

2.40. "U.S. Trustee" shall mean the office of the U.S. Trustee for Region 7.

**B. Rules of Interpretation and Construction of Terms**

Unless otherwise specified, all section, Article and exhibit references in this Plan are to the respective section in, Article of, or exhibit to, the Plan as the same may be amended, supplemented, or otherwise modified from time to time. The headings in the Plan are for convenience and reference only and shall not limit or otherwise affect the provisions or the interpretation hereof.

The words "herein," "hereof," and "hereunder" or other words of similar import shall refer to the Plan as a whole and not to any particular article, section, subsection or clause contained in the Plan, unless the context requires otherwise.

Whenever from the context it appears appropriate, each term stated in either the singular or plural includes both singular and plural, and pronouns stated in masculine, feminine or neuter form shall include all of the masculine, feminine or neuter form.

The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to this Plan and the Confirmation Order.

References herein to "after notice and hearing" or other similar language shall have the same meaning as in section 102(1) of the Bankruptcy Code. Otherwise, terms used herein that are not specifically defined herein shall have the meaning ascribed to those terms, if any, in the Bankruptcy Code.

Reference herein to any agreement, contract, instrument or other document in this Plan shall refer to such agreement, contract, instrument or document as amended, supplemented or modified.

## ARTICLE III
## PLAN SUMMARY

### A. Summary of the Plan

The Debtor is in the process of liquidating all of its assets and recovering on its Claims. The Debtor has designed this Plan to provide for an orderly disbursement of the proceeds of the Debtor's assets to holders of Allowed General Unsecured Claims after payment in full of all Allowed Secured Claims, Allowed Administrative Claims, Allowed Priority Claims and Allowed Priority Tax Claims. The Plan protects and preserves the interests of the various types of creditors and provides for prompt and meaningful treatment of their claims, to the best of the Debtor's ability in accordance with the provisions of the Bankruptcy Code.

The Debtor believes that this Plan represents the best mechanism to obtain the highest and most prompt return to all creditors, and the Debtor strongly encourages all creditors to vote to accept the Plan. The interested parties herein shall be dealt with by class as follows:

| | |
|---|---|
| no classification: | Administrative Expense Claims |
| no classification: | Priority Tax Claims of the Internal Revenue Service ("IRS"), Louisiana Department of Revenue and Texas Comptroller |
| unimpaired: | Midland County Appraisal District's Secured Claim |
| Class 1: | First Bank & Trust's Secured Claim - (impaired) |
| Class 2: | TXP Capital, LLC's Secured Claim - (impaired) |
| Class 3: | Texas Workforce Commission's Secured Claim - (impaired) |
| Class 4: | Reliance Financial's Secured Claim - (impaired) |

Class 5:    Non-Insider/Non-Affiliated Allowed General Unsecured Claims - (impaired)

Class 6:    Insider/Affiliated Claim of Fierce Property Investments, LLC - (disputed/impaired)

Class 7:    Equity Security Holders

## THE DEBTOR RESERVES THE RIGHT TO OBJECT TO THE ALLOWANCE OF ANY CREDITOR'S CLAIM IN THIS BANKRUPTCY PROCEEDING.

### B. Costs of Administration

All costs of administration approved and allowed by the Court will be paid in full upon entry of an Order by the Court approving the claimant's fee application. Parties can object to fee applications if they so desire.

The fees of McWhorter, Cobb & Johnson, LLP ("MCJ"), the attorneys representing the Debtor in this case, are anticipated to total approximately $50,000.00. The Court has not approved any payments to Debtor's counsel pursuant on any interim fee application filed by Debtor's counsel to date.

The fees of Eric Terry, the Subchapter V Trustee appointed in this case, are anticipated to total approximately $7,000.00. The Debtor is currently making payments to the Subchapter V Trustee pursuant to the Court's Order Granting Unopposed Application of Subchapter V Trustee for Post-Petition Security Deposit [Docket. No. 33].

The Debtor anticipates retaining Michael E. Drewett, CPA, as its accountant in this case. It is anticipated that the fees and expenses of this firm will be approximately $3,500.00

### C. Priority Tax Claimants

The priority tax claim owed to the Internal Revenue Service is estimated to be $69.86. Claimant will be paid in full either on the Effective Date of the Plan or the date upon which such tax claim becomes allowed and funds are available to pay this claim, whichever is later.

The priority tax claim owed to the Louisiana Department of Revenue is estimated to be $4,893.71. Claimant will be paid in full either on the Effective Date of the Plan or the date upon which such tax claim becomes allowed and funds are available to pay this claim, whichever is later.

The priority tax claim owed to the Texas Comptroller is estimated to be $2,774.65. Claimant will be paid in full either on the Effective Date of the Plan or the date upon which such tax claim becomes allowed and funds are available to pay this claim, whichever is later.

### D. Midland County Appraisal District - Unimpaired

The secured tax claim owed to the Midland County Appraisal District is estimated to be $60,562.75. The Debtor estimates that this claim will be paid in full from the proceeds of the sale of the Debtor's assets. Midland County Appraisal District will be paid in full either on the Effective Date of the Plan or within 30 days of the closing of the sale of the Debtor's assets, whichever is later.

### E. Class 1: First Bank & Trust's Secured Claim - Impaired

First Bank & Trust's ("FBT") extended credit to the Debtor on January 30, 2020, to purchase a its real property and improvements located at 2217 East County Road 155, Midland, Texas. FBT also claims a lien on all other assets of the Debtor. On April 9, 2024, FBT filed a proof of claim in this bankruptcy proceeding asserting a secured claim in the amount of $619,453.80. Debtor does not dispute FBT's claim or lien and estimates that this claim will be paid in full from the net proceeds of the sale of its assets. FBT will be paid in full either on the Effective Date of the Plan or within 30 days of the closing of the sale of the Debtor's assets, whichever is later.

### F. Class 2: TXP Capital, LLC's Secured Claim - Impaired

TXP Capital, LLP ("TXP") extended credit to the Debtor on April 28, 2023, which is secured by a 2nd lien against the Debtor's real property and improvements located at 2217 East County Road 155, Midland, Texas, as well as a lien on all other assets of the Debtor. On April 23, 2024, TXP filed a proof of claim in this bankruptcy proceeding asserting a secured claim in the amount of $744,194.17. On April 25, 2024, TXP filed an additional proof of claim in this bankruptcy proceeding asserting a secured claim in the amount of $26,222.47. Debtor does not dispute TXP's claims or lien and estimates that this claim will be paid in full from the net proceeds of the sale of the Debtor's assets after payment of FBT's claim in full. TXP will be paid in full either on the Effective Date of the Plan or within 30 days of the closing of the sale of the Debtor's assets of a sufficient amount to pay this claim and all prior lien claims, whichever is later.

### G. Class 3: Texas Workforce Commission's Secured Claim - Impaired

The Texas Workforce Commission's ("TWC") secured claim is estimated to be $54,907.32. The TWC filed its Notice of State Tax Lien on January 19, 2024. The Debtor estimates that this claim will be paid in full from the proceeds of the sale of the Debtor's assets. TWC will be paid in full either on the Effective Date of the Plan or within 30 days of the closing of the sale of the Debtor's assets of a sufficient amount to pay this claim and all prior lien claims, whichever is later.

### H. Class 4: Secured Portion of the Claim of Reliance Financial - Impaired

Reliance Financial ("Reliance") extended funds to the Debtor to purchase its accounts receivable. On May 24, 2024, Reliance filed a proof of claim in this bankruptcy proceeding asserting a secured claim in the amount of $642,925.00. The Debtor intends to pursue collection of all of its outstanding accounts receivable subject to the prior lien claims of FBT and TXP. The secured portion of Reliance's claim will be paid on the Effective Date of the Plan or within 30 days of the recovery of the accounts receivable, subject to the prior lien claims of FBT and TXP, whichever is later. Reliance's remaining deficiency claim will be treated as an unsecured claim.

### I. Class 5: Non-Insider/Non-Affiliated General Unsecured Creditors - Impaired

Class 5 represents general unsecured creditors that are non-insider/non-affiliated creditors of the Debtor. Class 5 creditors will be paid on their claims, as allowed by the Court, as follows:

Non-insider/non-affiliated unsecured creditors will be paid a pro rata share of all remaining cash generated by the collection of funds from all sources. Remaining cash means the funds left after payment in full of all secured claims, administrative expense claims and priority tax claims described in this Plan, and includes both pre- and post-Plan confirmation costs ("Remaining Cash"). All non-insider/non-affiliated

unsecured claims are listed on the attached Exhibit "A". The Debtor shall not be required to make any distribution if the available funds are not sufficient to justify incurring the expense necessary to make such distribution, including any reserve reasonably necessary to meet Administrative Expenses.

No interest will be paid on Class 5 unsecured claims.

### J. Class 6: Insider/Affiliated General Unsecured Claim of Fierce Property Investments, LLC – Impaired/Disputed

Class 6 represents the insider or affiliate claim of Fierce Property Investments, LLC ("Fierce Property"). Fierce Property owns 30% of the outstanding shares of the Debtor. On May 28, 2024, Fierce Property filed a proof of claim in this bankruptcy proceeding asserting a unsecured claim in the amount of $1,500,000.00. Fierce Property's claim is disputed by the Debtor. To the extent allowed by the Court, Class 6 will be paid only after all Class 5 claims have been paid in full according to the terms of this Plan.

### K. Class 7: Holders of Stock Interests

Upon sale of the Debtor's assets and the distributions of the net proceeds as called for in this Plan, there will not be any funds available to make a distribution(s) to the stockholders of the Debtor. Upon all distributions set forth in this Plan, the Debtor will be terminated under Texas law.

### L. Liquidation Analysis

The alternative to this Chapter 11 plan of liquidation would be a Chapter 7 liquidation, whereby the remaining assets, primarily outstanding claims of the bankruptcy estate, would be collected and proceeds distributed to the creditors. While the Debtor is proposing a liquidating plan, the Debtor believes its continued control over the Debtor and sale of its assets as provided in this Plan will provide a greater distribution to creditors than conversion to a Chapter 7. The conversion of the Debtor's case to Chapter 7 will most likely result in the plain appointment

| Description | Value | Liens | Net |
|---|---|---|---|
| **Real Property:** | | | |
| 2217 E. CR 155, Midland, Texas | $1,750,000 | $1,424,210 | $325,789 |
| **Total** | **$1,750,000** | **$1,424,210** | **$325,789** |

| Description | Value | Liens | Net |
|---|---|---|---|
| **Personal Property:** | | | |
| Equipment: <br> - 2-40 ft containers <br> - 2018 track hoe 210 <br> - small connex <br> - misc tools | $140,000 | | $140,000 |

- 14'x28' building
- 14'x24' building.
- 24 gen/compressors
- padding bucket
- sand blast rigg
- skids/yellow cones
- scrap metal/pipe and racks
- twelve (12) cargo trailers
- three (3) pipe trailers
- four (4) water trailers

| | | | |
|---|---|---|---|
| Trencher:<br>1055 Vermeer trencher | $380,000 | $280,000 | $100,000 |
| Vehicle:<br>2005 Kenworth truck<br>and 48' flatbed trailer | $20,000 | | $20,000 |
| Office Furniture:<br>office furniture and<br>computers | $2,000 | | $2,000 |
| Accounts Receivable | $267,000 | $267,000 | $0.00 |
| **Total** | **$809,000** | **$547,000** | **$262,000** |
| **Grand Total** | **$2,559,000** | **$1,971,210** | **$587,789** |

### ARTICLE IV
### MISCELLANEOUS PROVISIONS

#### A. Creditors Have the Right to Vote on the Plan.

After reading this plan, creditors will have the right to vote on whether the Bankruptcy Court should "confirm" the Debtor's Plan. Each creditor should read this Plan carefully, discuss it with a lawyer, and then fill out the ballot that will be provided. The Debtor's lawyer will assemble the ballots and report to the Bankruptcy Judge. A "Confirmation Hearing" in this case and decide whether to "confirm" the plan and prior notice of this hearing will be provided to all creditors and parties in interest.

#### B. Creditors Also Have the Right to Object to Confirmation of the Plan.

A Creditor has the right to file a written objection to the Debtor's Plan with the Bankruptcy Court. The deadline for objections to confirmation of the Plan has been set by the Court and prior notice of the objection deadline will be provided to all creditors and parties in interest.

## C. The Court May Approve the Debtor's Plan and Limit Creditors' Legal Rights.

The Court will consider only the written objections to confirmation of the Plan that are timely filed and the ballots that are timely filed. If no objections are filed (or if all objections are overruled by the Court), the Court may approve the Plan. If the Court approves the Plan, all creditors will be bound, even if a creditor did not vote and even if a creditor voted against the Plan. This means that a creditor will not be allowed to collect its claim against the debtor except as provided in this Plan.

## D. What to Do for More Information?

Creditors should talk with a lawyer about their rights and responsibilities in this case. Creditors should have their lawyers call the lawyer for the Debtor. The Debtor's lawyer is:

Todd J. Johnston; SBN: 24050837
McWhorter, Cobb & Johnson, LLP
1722 Broadway
Lubbock, Texas 79401
(806) 762-0214; fax: (806) 762-8014

If a creditor does not have a lawyer but still wants more information, that creditor can call the Debtor's lawyer directly. HOWEVER, REMEMBER THAT THE DEBTOR'S LAWYER CANNOT GIVE CREDITORS LEGAL OR FINANCIAL ADVICE BECAUSE DEBTOR'S LAWYER REPRESENTS THE DEBTOR, NOT CREDITORS.

## E. Are There Any Tax Effects of This Plan?

The Debtor does not believe that this Plan creates any special tax consequences.

Tax Effects to Creditors: creditors should consult with their own tax advisor.

## F. Debtor's Obligation to the U.S. Trustee.

During the pendency of this bankruptcy case, the Debtor will comply with all regulations promulgated by the Office of the U.S. Trustee.

## ARTICLE V
## RETENTION OF JURISDICTION

The Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code until the final allowance or disallowance of all claims and final determination with respect to all matters, including the following:

a.    To enable the Debtor to consummate any and all proceedings that they may bring to set aside liens or encumbrances to determine the validity, extent and enforceability of any lien or to recover any preferences, transfer, assets or damages to which it may be entitled under applicable provisions of the

Bankruptcy Code or other federal, state, or local law. Specifically, the Debtor shall be authorized before or after confirmation to bring any action against any party arising before or after confirmation;

b.     To adjudicate all controversies concerning the classification or allowance or reconsideration of allowances of any claim or any security interest, including without limitation, to liquidate claims in connection with any disputed, contingent or unliquidated claims;

c.     To hear and determine all claims arising from the rejection or assumption of any executory contracts, including leases and to consummate the rejection and determination thereof;

d.     To adjudicate all claims to a security or ownership interest in any of the debtor's property or any proceeds thereof;

e.     To adjudicate all claims or controversies arising out of any purchases, sales, or contracts made or undertaken by the Debtor during the pendency of the proceedings;

f.     To recover all assets and properties of the Debtor wherever located;

g.     To adjudicate all claims pertaining to preferences and fraudulent transfers;

h.     To determine the reasonableness of and make any award for administrative expenses, including attorney's fees applied for before or after the plan confirmation date, and to provide for payment thereof; and

i.     Additionally, the Court shall retain exclusive jurisdiction in the future for the purpose of determining whether or not a default has occurred and for the purpose of granting any remedy to any creditor hereunder which is authorized by the Bankruptcy Code.

**ARTICLE VI**
**PLAN VOTE**

The Debtor asks that Creditors vote in favor of the Debtor's Plan because it will allow the Debtor to quickly pay Creditors as much as possible on their claims.

Once received, please mail your ballot to:

> Todd J. Johnston; SBN: 24050837
> McWhorter, Cobb & Johnson, LLP
> 1722 Broadway
> Lubbock, Texas 79401

Dated: March 18, 2024.

Respectfully submitted,

MCWHORTER, COBB & JOHNSON, LLP
1722 Broadway
Lubbock, Texas 79401
Telephone – 806.762.0214
http://www.mcjllp.com


By: /s/ Todd J. Johnston
Todd J. Johnston
State Bar No. 24050837
Email: tjohnston@mcjllp.com
COUNSEL FOR DEBTOR AND
DEBTOR IN POSSESSION

APPROVED:

/s/ Doug Onstead
Doug Onstead, Authorized Representative
of Forza Pipeline Services, Inc.

Exhibit "A"

Unsecured Claims – Impaired

The following are creditors who have filed proofs of claim in this proceeding whose claims may comprise
part of Forza Pipeline Services, Inc.'s Non-insider/Non-affiliated Creditor Class (Class 5):

| Proof of Claim No. | Creditor Name | Claim Amount |
|---|---|---|
| 1 | Bryd Oilfield Services, LLC | $19,452.52 |
| 8 | Oil Industry Coatings, LLC | $109,300.76 |
| 9 | Intake Rental & Supply, LLC | $126,234.30 |
| 10 | Cisco Equipment | $49,979.15 |
| 12 | Mulholland Energy Services, LLC | $80,971.55 |
| 13 | PSS Industrial Group | $12,720.80 |
| 14 | McIntyre DOT Safety Consultants | $675.00 |
| 15 | Golden Crown Services Corp | $1,500.00 |
| 16 | Sierra Springs | $3,840.68 |
| 17 | BTH Services and Rental, LLC | $27,504.51 |
| 18 | BTH Services and Rental, LLC | $27,504.51 |
| 19 | Gajeske Incorporated | $81,380.55 |
| 23 | Koserca | $89,955.01 |
| 24 | Airgas USA, LLC | $1,134.47 |
| 25 | Airgas USA, LLC | $762.51 |
| 26 | Permian Tractor Sales, Inc. | $56,892.40 |
| 29 | Ferguson Enterprises, LLC | $13,443.66 |
| 30 | United Rentals (North America), Inc. | $25,542.27 |
| 31 | Martin Gonzales Inc. | $161,311.42 |
| 32 | Foundation Energy Services LLC | $11,564.67 |
| 33 | Texas Lobo Trucking, LLC | $52,091.26 |
| 35 | Acuren Inspection | $2,029.40 |
| 36 | Onsite Diesel Tech LLC | $10,697.77 |
| 37 | Enterprise FM Trust | $185,688.46 |
| 38 | Kendrick Oil Co. | $104,468.22 |
| 40 | First Augusta, LLC dba Kalaco Equipment Company | $81,890.21 |
| 41 | United States Fire Insurance Company | $0.00 |

|  | **Sub-Total** | **$1,338,536.06** |

The following are identified on the Debtor's Schedule "F" as creditors holding unsecured non-
insider/non-affiliated claims and which are not scheduled as disputed, contingent, or unliquidated, and for
which no proof of claim has been filed. These creditors may also comprise Class 5:

| Creditor Name | Claim Amount |
|---|---|
| 3H Trucking, LLC | $39,113.00 |
| A-1 Embroidery & Screening | $6,876.68 |
| Ace Specialties, Inc. | $12,720.80 |

| | |
|---|---|
| Alpha Dog Testing, LLC | $2,200.00 |
| American Piping Inspection | $15,420.00 |
| ARC Inspection Services, LLC | $2,800.00 |
| Bell Supply Company | $1,011.79 |
| Big Horn Supply, LLC | $52,551.16 |
| Bill Williams Tire Center | $6,781.40 |
| Black Gold BGES Energy Services | $241,855.02 |
| Burgess Bookkeeping Inc | $260.00 |
| CMS Commercial Metals | $943.50 |
| Culligan Water of West Texas | $3,642.12 |
| Darkhorse Energy Services, LLC | $3,547.50 |
| De Lage Landen Financial Services, Inc. | $15,066.84 |
| Driven Services LLC | $11,150.00 |
| Elite Parts | $1,089.43 |
| Enterprises Fleet Truck | $185,455.55 |
| First Choice Oilfield Service | $2,700.00 |
| Flexpipe Systems (US) LLC | $10,265.58 |
| Forza Safety | $4,503.20 |
| GCR Rentals | $4,786.13 |
| Geotab USA, Inc./Enterprise FM | $190.08 |
| Goodnight Midstream, LLC | $26,222.47 |
| Gorilla Coating, LLC | $73,982.46 |
| Huncho Energy Services, LLC | $1,795.00 |
| Iron Horse Supply LLC | $11,186.32 |
| ISCO Industries | $108,983.54 |
| Joat One Enterprise | $7,056.00 |
| KDO Enterprises, LLC | $282,378.00 |
| Kelly, Morgan, Dennis, Corzine, & Hansen P.C. | $2,055.00 |
| Kendrick Oil Company | $96,817.36 |
| Kirby-Smith Machinery, Inc. | $33,457.71 |
| Lou's Clinical Lab, Inc. | $8,390.00 |
| Louisiana Department of Revenue | $1,384.27 |
| Martin's Services | $161,311.42 |
| Matheson | $8,949.14 |
| Merchants Fleet | $11,664.35 |
| Michael Price | $26,718.00 |
| Milford | $7,122.59 |
| Mitchell Hopper Infrastructure | $18,884.00 |
| Mulch Masters, LLC | $27,450.00 |
| New Mexico Taxation & Rev. Department | $435,919.49 |
| Onsite Diesel Tech, LLC | $10,697.77 |
| PACE Field Services, LLC | $10,905.00 |
| Permian Basin Office | $351.81 |
| Personnel Concepts | $697.03 |
| Precision Crane & Transport | $48,342.50 |
| Pump Specialist, Inc. | $171,275.00 |
| Quarles Petroleum | $93,606.84 |
| RK Pump & Supply | $11,046.58 |
| Rogue Industries | $1,470.00 |
| Safe Hands Safety | $17,417.88 |
| Sek Industrial Coatings | $39,220.00 |

| | |
|---|---|
| Shawcor Composite Production Systems | $12,318.70 |
| Sherwin Williams | $243.34 |
| Sunbelt Rentals | $7,633.20 |
| Sunstate Equipment Co. | $1,204.16 |
| Superior Hydrovac Solutions, LLC | $51,694.43 |
| Terra HDD Road Bores | $61,100.00 |
| Texas ReExcavation LC | $3,500.00 |
| The Hogg's, LLC | $129,255.37 |
| Triple T Fence, LLC | $216.50 |
| VAC2GO-KY | $34,460.26 |
| Vermeer Texas – Louisiana | $19,498.26 |
| Viper Specialized Services, LLC | $8,915.00 |
| West Texas IT Consulting | $5,052.57 |
| Wiebe's Fresh Water, LLC | $240.00 |
| Wild West Trucking, LLC | $38,077.60 |
| Xstreme MD | $3,102.00 |
| Yellowhouse Machinery, Co | $14,350.00 |

**Sub-Total**     **$2,772,548.70**